UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No.: 2:15-cv-00783-JES-MRM

ARLENE ROTH,

    Plaintiff,

v.

NATIONSTAR MORTGAGE LLC,

    Defendants.

_____/

# DEFENDANT NATIONSTAR MORTGAGE LLC'S
## MOTION TO DISMISS COMPLAINT (ECF No. 1)

### I. OVERVIEW

Defendant Nationstar Mortgage LLC (**Nationstar**) moves to dismiss plaintiff Arlene Roth's complaint (ECF No. 1). This case centers on whether Nationstar took improper actions to collect on a debt in violation of 15 U.S.C. § 1692, *et seq.* (**FDCPA**) and FLA. STAT. § 559.55, *et seq.* (**FCCPA**). (ECF No. 1, ¶ 2).[1] Plaintiff alleges that by sending her a monthly statement, Nationstar improperly attempted to collect a debt. Her claims misapprehend 15 U.S.C. § 1692, *et seq.* and FLA. STAT. § 559.55, *et seq.*, specifically what constitutes the collection of a debt. Her claims also misapprehend 11 U.S.C. § 524 and the effect of a discharge order on a residential mortgage. The discharge order did not extinguish the mortgage debt or eliminate the underlying mortgage lien. And the communication included a clear disclaimer that, to the extent Plaintiff had received a bankruptcy discharge, the information presented was for informational purposes only and not demanding payment. Plaintiff has failed to state claims for improper debt collection in violation of the FDCPA or FCCPA.

---

[1] Per plaintiff, her loan was discharged in bankruptcy and the claims alleged here arose after. (ECF No. 1, ¶¶ 9-13).

{37170514;1}

11 U.S.C. § 524 precludes or preempts Plaintiff's claims under the FDCPA and FCCPA. The claims are entirely based on Nationstar's alleged violation of the discharge injunction, and necessarily require interpretation of 11 U.S.C. § 524, and its effect on Plaintiff's mortgage. Dismissal is warranted.

The Truth in Lending Act (**TILA**) also precludes or preempts Plaintiff's FDCPA and FCCPA claims. TILA directs servicers to send periodic statements containing certain required fields, such as amounts due, to debtors even after they receive a discharge. Because TILA instructed Nationstar to send the statement at issue, and Nationstar sent it in the approved form, any debt collection claim based on the statement would be either precluded or preempted by TILA. This fact also necessitates dismissal of Plaintiff's breach of settlement agreement claim, as the agreement provides Nationstar may continue to communicate with Plaintiff as required by law.

## II. FACTUAL BACKGROUND

On December 22, 2010, plaintiff initiated a voluntary petition for relief pursuant to Chapter 13 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, in the United States Bankruptcy Court for the Middle District of Florida, case no. 9:10-bk-30383 (the **Bankruptcy**) (ECF No. 1, ¶ 6). In her bankruptcy schedules, plaintiff listed the property located at 2617 Nightshade Lane, Fort Myers, FL 33905 (**property**) and identified BAC Home Loans Servicing as a creditor holding a first mortgage on the property. (ECF No. 1, Ex. A). Plaintiff also stated her intent to surrender the property. (*Id.*) Plaintiff's debts were discharged through the bankruptcy on June 30, 2014. (ECF No. 1, Ex. D).

Subsequent to the discharge, Plaintiff filed a federal lawsuit against Nationstar for alleged violations of the FDCPA and FCCPA in a case styled *Arlene Roth v. Nationstar Mortgage LLC*,

United States District Court for the Middle District of Florida, case number 2:15-cv-00508-UA-CM. The parties entered into a confidential settlement agreement resolving the matter, with no admission of liability by either party. The agreement provide that Nationstar would cease communications with the Plaintiff, including account statements, but allowed for continued communications as required by law.

Plaintiff's collection-based allegations are premised on a mortgage loan statement sent by Nationstar informing Plaintiff of the balance on the mortgage which are attached to her complaint (the "**Mortgage Statement**"). (ECF No. 1, Ex. E). This mortgage loan statement was expressly titled "Informational Statement," and included the following bold-face type disclaimer on the front of the statement:

> This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a demand for payment from any individual protected by the United States Bankruptcy Code. If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and is not an attempt to collect a debt. Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.

(*Id.*) In her prayer for relief, Plaintiff seeks actual damages, statutory damages, costs of litigation, and attorney's fees.

Plaintiff's final claim alleges Nationstar's sending of the Mortgage Statement materially violated the terms of the parties' settlement agreement.

### III. MEMORANDUM OF LAW

A court reviewing a motion to dismiss under Rule 12(b)(6) accepts the plaintiff's material allegations as true, but conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "Threadbare recitals of the elements of a cause of

3

action, supported by mere conclusory statements, do not suffice." *Smith v. Williams*, 819 F. Supp. 2d 1264, 1269 (M.D. Fla. 2011) (quoting *Iqbal*, 556 U.S. at 678).

The legal standard to be applied when evaluating a motion to dismiss is one of plausibility—"a complaint must state a claim that is plausible on its face" and incorporate "sufficient factual matter" in support of the claim. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Satisfying this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 687 ("Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."). Rather, for a claim to be facially plausible, a plaintiff must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

A. **Plaintiff Fails To Allege Improper Conduct Under the FDCPA and FCCPA.**

Plaintiff's collection violations claim is based on the sending of the Mortgage Statement. (*See generally* ECF No. 1). This alleged conduct falls outside of "debt collection" necessary to sustain violations under the FDCPA and FCCPA. *Marshall v. Deutsche Bank Nat. Trust Co.*, No. 4:10CV00754-BRW (E.D. Ark. Feb. 1, 2011) (denying collections-based claims and noting, "letters regarding loan modification were attempts to restructure the debt instrument and lower the payments, not a demand for payment," and "[a] loan statement is essentially a communication from a creditor to a debtor, not a communication from a debt collector for purposes of collecting a debt."); *see also Bailey v. Security National Servicing Corporation*, 154 F.3d 384, 389 (7th Cir. 1998) (holding that a letter which "merely inform[ed plaintiffs] about 'the

current status' of their account, did not 'fall under the ambit'" of the FDCPA).[2] As an added buffer, the disclaimers in the statements at issue note that each communication is for informational purposes only and is not an attempt to collect a debt. *See Pultz v. NovaStar Mortg., Inc. (In re Pultz)*, 400 B.R. 185, 190 (Bankr. D. Md. 2008) (dismissing claims under the FDCPA and Maryland Consumer Debt Collection Act, noting that "[t]he [notice] was required by the contract itself, and contained a conspicuous disclaimer that it did not create personal liability because the debtor had filed bankruptcy.").

### i. FDCPA Claim Fails as a Matter of Law.

"A prima facie claim under the FDCPA requires the following: (1) the plaintiff was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as that term is defined under the FDCPA,[3] and (3) the defendant engaged in an activity that is prohibited by the FDCPA." *Helman v. Udren Law Offices, P.C.*, 0:14–CV–60808, 2014 WL 7781199, at *2 (S.D. Fla. 2014) (footnote added). To determine whether a communication was made to collect a debt, courts apply a "commonsense inquiry" based on all factors surrounding the communication, including the "purpose and context of the communications." *See Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380, 384-85 (7th Cir. 2010); *see also Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (noting that although an explicit demand for payment is not always necessary for the statute to apply, "the statute does not apply to every communication between a debt collector and a debtor.") (quoting *Gburek*, 614 F.3d at 385).

---

[2] "[T]o hold that a secured creditor is precluded from sending monthly billing statements to a debtor . . . would unduly complicate the lives of debtors and likely result in a greater number of missed payments and foreclosures by creditors. This could not be Congress's intent passing 11 U.S.C. § 524(a)(2)." *Ramirez v. GMAC (In re Ramirez)*, 280 B.R. 252, 258 (C.D. Cal. 2002).

[3] It is unnecessary to analyze whether Nationstar is a "debt collector" under the FDCPA. But, Nationstar does not concede that status, and reserves the right to separately contest it.

5

Courts have consistently analyzed a clear set of factors in making this determination: (1) whether the communication demands payment from the debtor; (2) whether the communication discusses the specifics of the debtor's underlining debt; and (3) whether the purpose of the communication is to inform the debtor of the status of his or her loan or possible available loan workout options. *Id.* Stated differently, to be considered an attempt to collect a debt, "an animating purpose of the communication must be to induce payment by the debtor." *Grden*, 643 F.3d at 173. Plaintiff cannot show the Mortgage Statement sent by Nationstar had the "animating purpose" of inducing payment. Her claims fail.

### a. The Mortgage Statement Was Not an Attempt to Collect a Debt.

Plaintiff claims the Mortgage Statement was an effort at debt collection in violation of the FDCPA. (ECF No. 1, pps. 7-9). However, "[a] regular bank statement sent only for informational purposes is . . . not an action in connection with the collection of a debt." *Goodin v. Bank of Am.*, N.A., No. 3:13-CV-102-J-32JRK, 2015 WL 3866872, at *6 (M.D. Fla. June 23, 2015) (citing *Helman*, 2014 WL 7781199, at *6); *see also In re: Whitmarsh*, 383 B.R. 735, (Bankr. D. Neb. 2008) (emphasis added) (letters sent by loan servicer to debtors did not constitute demands for payment or violate the automatic stay). The Mortgage Statement does not demand payment from the Plaintiff. *Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 2d 1353, 1356 (M.D. Fla. 2012). Instead, as evidenced by the disclaimer discussed *infra*, as well as the fact the Mortgage Statement is entitled "Informational Statement," the "animating purpose" of the Mortgage Statement was to provide plaintiff with information about her mortgage account. *Grden*, 643 F.3d at 173. The Mortgage Statement cannot be considered to be debt collection activity.

6

In *Helman*, the Southern District of Florida considered bank statements substantively identical to the Mortgage Statement at issue, and determined the statements did not constitute debt collection activity. 2014 WL 7781199, at *6. In determining the substantively identical bank statements were not debt collection activity, the court stated:

> Plaintiff also asserts that Defendants engaged in debt collection activity by sending monthly statements to Plaintiff that established, among other things, the balance Plaintiff would be required to pay to satisfy the mortgage on her residence. The monthly statements included, however, the following language: "This statement is sent for informational purposes only *and is not intended as an attempt to collect, assess, or recover a discharged debt from you. .... If this account is active or has been discharged in a bankruptcy proceeding,* be advised this communication is for informational purposes only and *is not an attempt to collect upon a debt.*" Because the monthly statements did not demand payment and instead included express language for persons who had received a bankruptcy discharge . . . the monthly statements in the instant case, as a matter of law, did not constitute debt collection activity.

*Id.* (internal citations omitted) (emphasis in original). The language regarding persons who had received a bankruptcy discharge contained in the Mortgage Statement at issue is **identical** to the bank statements analyzed in *Helman*. The Mortgage Statement is not debt collection activity as a matter of law.

### ii. FCCPA Claim Fails as a Matter of Law.

Plaintiff asserts Nationstar violated FLA. STAT. § 559.72(9), again alleging "Defendant authorized and facilitated against the Plaintiff an attempt to collect a debt from the Plaintiff when it knew such debt had been discharged in Plaintiff's bankruptcy and was thus no longer owed." (ECF No. 1 ¶ 27). This claim fails because Plaintiff's mortgage was not extinguished by the discharge, and Nationstar's post-discharge actions were permissible by law. *See, e.g., Johnson v. Home State Bank*, 501 U.S. 78, 82-84 (1991) (citing 11 U.S.C. § 522(c)(2)) (mortgage interest survives the personal liability discharge); *In re Scantling*, 465 B.R. 671, 678 & n. 31 (Bankr. M.D. Fla. 2012) ("To be sure, the chapter 7 discharge does extinguish a debtor's personal liability

on a secured claim. **But it does not extinguish the underlying debt.**") (emphasis added); *In re Evans*, No. 05-03017, 2005 WL 3845700, *3-4 (Bankr. N.D. Fla. Dec. 21, 2005) (following a discharge, the debtor "is no longer *personally* liable for the mortgage, but the mortgage debt still exists"). Plaintiff's claim also fails because she does not sufficiently allege the elements for a FCCPA violation.

The FCCPA is patterned after the FDCPA and, like the federal statute, only precludes those communications whose purpose is the collection of a consumer debt. FLA. STAT. § 559.72(9); *Goodin*, 2015 WL 3866872, at *7; *DeFrancesco v. Veripro Solutions Inc.*, No. 2:14-CV-27-FTM-29DNF, 2015 WL 179376, at *2 (M.D. Fla. Jan. 14, 2015) (stating "The FCCPA is construed in accordance with the FDCPA.") (citation omitted). Determining whether the purpose of the communication is to collect a debt depends upon the **content of the communication**. *Id.* Plaintiff's FCCPA claims fail for the same reason the FDCPA claims fail. The Mortgage Statement was not debt collection activity within the ambit of either statute.

As discussed *supra*, the Mortgage Statement includes a disclaimer concerning debt collection, stating that the communication is for informational purposes only and is not an attempt to collect a debt. (ECF No. 1, Ex. E). Courts have considered similar disclaimer provisions and found the correspondence is outside of the "debt collection" purview. *Helman*, 2014 WL 7781199, at *6; *Hasbun v. ReconTrust Company, N.A.*, 508 Fed. App'x 941 (11th Cir. 2013) (the correspondence "explicitly informed [plaintiff] that [defendant] was not demanding payment of a debt"); *Parker.*, 874 F. Supp. 2d at 1358 ("the Court concludes, as a matter of law, that the December 2010 letter is not a communication in connection with debt collection. The letter did not demand payment or discuss specifics of the underlying debt."); *Pultz*, 400 B.R. at 190 (dismissing claims under the FDCPA and Maryland Consumer Debt Collection Act, noting

8

that "[t]he [notice] was required by the contract itself, and contained a conspicuous disclaimer that it did not create personal liability because the debtor had filed bankruptcy."). Because Plaintiff does not plead facts plausibly showing that the Mortgage Statement's purpose was debt collection, her FCCPA claim should be dismissed.

B. **Plaintiff's Claims Are Preempted or Precluded.**

  i.   **11 U.S.C. § 524 Bars FDCPA and FCCPA Claims.**

Even if Plaintiff's claims were properly pled—which they are not—they are preempted or precluded by 11 U.S.C. § 524. Both Plaintiff's FDCPA and FCCPA claims are predicated on the effect of the discharge on her mortgage debt, and attempt to circumvent the fact that no private right of action exists under 11 U.S.C. § 524. Specifically, Plaintiff's claims are predicated on allegations that, "Defendant authorized and facilitated against the Plaintiff an attempt to collect a debt from the Plaintiff when it knew such debt had been discharged in Plaintiff's bankruptcy and was thus no longer owed." (ECF No. 1, pps. 4-6 ¶¶ 27 & 35 ). Despite her attempts to plead around § 524, these claims are ultimately based on Nationstar's alleged violation of the discharge injunction. *See AT&T Mobility LLC v. Bushman*, Case No. 11-90822-CIV-Ryskamp, 2011 WL 5924666 (S.D. Fla. Sept. 23, 2011) ("The 'nature of a pleading' is determined by its 'substance, not its label.'"). Plaintiff's claims necessarily require interpretation of 11 U.S.C. § 524, and its effect on her mortgage.

The Bankruptcy Code governs the effect of discharges and what can and cannot be done post-discharge. There is no private right of action under § 524. *Guetling v. Household Fin. Servs.*, Inc., 312 B.R. 699, 704 (M.D. Fla. 2004). Attempts to circumvent the lack of a private right of action by recasting a discharge violation as a violation of some other state or federal statute have been rejected. *See Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010), *Walls v. Wells Fargo Bank*, 276 F.3d 502, 510 (9th Cir. 2002); *but cf. Randolph*

9

v. *IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004); s*ee also Mears v. LVNV Funding, LLC*, --- B.R.---, 2015 WL 7067856, at *4 (M.D. Fla. 2015); *but see In re Seak*, No. 3:13-bk-5446-PMG, 2015 WL 631578, at *3 (Bankr. M.D. Fla. Jan. 22, 2015). This includes claims for violations of the FDCPA. *Walls*, 276 F.3d at 510 (stating "To permit a simultaneous claim under the FDCPA would allow through the back door what Walls cannot accomplish through the front door—a private right of action."). Plaintiff's FDCPA claim is precluded as it is an improper attempt to manufacture a private right of act of action under 11 U.S.C. § 524.

This analysis applies equally to Plaintiff's FCCPA claims, as alternative state court remedies to a post-discharge injunction "conflict with Congress's plan that federal courts enforce § 524 through § 105." *Besette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000); *see also Walls*, 276 F.3d at 510; *but cf. Randolph*, 368 F.3d at 729. "Congress preempted private state law remedies with the discharge injunction in § 524." *Helman*, 2014 WL 7781199, at *7. The Code "governs the field" of bankruptcy law, preempting state law on that basis. *See In re Rosenberg*, 471 B.R. 307, 315 (Bankr. S.D. Fla. 2012). Plaintiff's FCCPA claim is preempted by 11 U.S.C. § 524.

### ii. TILA Bars Claims Based on Approved Periodic Statements.

In addition to the Bankruptcy Code's preclusive effect on Plaintiff's claims, her claims cannot stand as they are premised on the mere sending of a mortgage statement post-discharge after January 10, 2014. TILA can be read as requiring—and at a minimum certainly contemplates and permits—Nationstar to send mortgage statements for residential mortgage loans post-discharge, and the Mortgage Statement was in the approved form. To the extent the FDCPA and/or FCCPA are alleged to prohibit Nationstar from sending the same statements expressly permitted by TILA, there is a conflict, and Plaintiff's claims are barred.

TILA and Regulation Z directs servicers to send periodic statements for each billing

cycle. 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(a).[4] The form, content and layout of the periodic statements must include, among other items, an amount due, total of fees or charges imposed since the last statement, and delinquency information. 12 C.F.R. § 1026.41(c)-(d). The CFPB has provided form statements and confirmed that use of the forms complies with the content and layout requirements. *Id.* § 1026.41(c).

Though a servicer is exempt from sending periodic statements while a bankruptcy is pending, *id.* § 1026.41(e)(5), once the bankruptcy is dismissed or closed or the consumer receives a discharge, the servicer "must resume sending periodic statements in compliance with § 1026.41 within a reasonably prompt time after the next payment due date . . . ." Official Interpretation to § 1026.41(e) (Official Interpretation may be found at http://www.consumerfinance.gov/eregulations/1026-41/2015-0132#1026-41-e-4-iii-B).

The TILA periodic statement requirement was enacted under § 1420 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, PL 111-203, 124 Stat 1376, 2154 (July 21, 2010), which was made effective January 4, 2014.[5] In determining the circumstances in which a periodic statement would be required, the CFPB fully considered the impact of the Bankruptcy Code and the FDCPA.

---

[4] The Consumer Financial Protection Bureau (**CFPB**) has implemented TILA through "Regulation Z". 12 C.F.R. § 1026.1

[5] The effective date of § 1420 is defined by § 1400(c) of the Dodd-Frank Act, which provides that the subsections it governs did not become effective until "either the date on which the final regulations implementing such section, or provision, take effect; or if regulations are not issued for that section, on the date that is 18 months after the designated transfer date." *Id.* at *5. On January 17, 2013, the CFPB issued a final rule implementing the Dodd-Frank Act amendments, including § 1420, setting an effective date of January 10, 2014. *See* Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 10901 (to be codified in 12 C.F.R. Pt. 1026); *see also* Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 62993, 63000-63002 (amending its final rule with respect to § 1420 to include an exemption for debtors in bankruptcy).

> The Bureau understands that certain laws, such as the FDCPA or the Bankruptcy Code, may prevent attempts to collect a debt from a consumer in bankruptcy, but does not believe these laws prevent a servicer from sending a consumer a statement on the status of their loan. The final rule would allow servicers to make changes to the statement as they believe are necessary when a consumer is in bankruptcy; such servicers may include a message about the bankruptcy[125] and alternatively present the amount due to reflect the payment obligations determined by the individual bankruptcy proceeding.
>
> *fn 125. For example, servicers may include a statement such as: "To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, Creditor retains rights under its security instrument, including the right to foreclose its lien."

78 Fed. Reg. 10902, 10966.

Following commentary on its proposed final rule, and recognizing the interactions between § 1026.41 periodic statement requirements and the Bankruptcy Code "can be highly varied and complex" the CFPB amended § 1026.41(e) to include an exception for debtors **in bankruptcy**. *See* 78 Fed. Reg. at 63000-63002.

No similar exclusion for borrowers who receive a discharge of their personal liability was added. The only relevant guidance from the CFPB in this situation is that the

> requirement to resume sending periodic statements does not require a servicer to communicate with a consumer in a manner that would be inconsistent with **applicable bankruptcy law** or a court **order in a bankruptcy case**. To the extent **permitted by such law or court order**, a servicer may adapt the requirements of § 1026.41 in any manner believed necessary.

*Id.* (emphasis added).

Nationstar's form mortgage statements follow the CFPB approved forms. *Compare* ECF No. 1, Ex. E *with* Appendix H to 12 C.F.R. § 1026 (Forms H-30(A),(B) & (C)).

While a servicer may adapt the form as "permitted" by the Bankruptcy Code or bankruptcy court order, this adaption allowance is not at issue because Nationstar's argument is

12

limited to Plaintiff's claim the mortgage statement violates the FDCPA and/or FCCPA not the Bankruptcy Code or a bankruptcy order. The CFPB has previously opined the periodic statement requirement would not violate the FDCPA if the form was adapted by disclaiming an attempt to collect. 78 Fed. Reg. 10902, 10966. Nationstar's statement did just that: "This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a demand for payment from and individual protected by the United States Bankruptcy Code." (ECF No 1, Ex. E.) Nationstar's attempt to comply with TILA cannot base a FDCPA or FCCPA claim.

This Court considered a similar preemption argument in *Kelliher v. Target Nat'l Bank*, 826 F. Supp. 2d 1324 (M.D. Fla. 2011). There, the plaintiff argued the defendant violated the FDCPA and FCCPA by sending the plaintiff monthly billing statements after it knew the plaintiff was represented by counsel with respect to the debt. *Id.* at 1327-28. The defendant argued it was required to send the monthly billing statements pursuant to TILA, so it should not be penalized under the FCCPA for its compliance. *Id.* at 1328. This Court found the defendant could comply with TILA "without potentially running afoul of the FCCPA by not including debt collection language" within the monthly statements. *Id.* at 1329. In that case, the defendant's monthly statements included extraneous debt collection language not required by TILA, so the Court denied the motion to dismiss on that basis. *Id. Kelliher* is distinguishable because there is no extraneous debt collection language within the Mortgage Statement. To the contrary, the Mortgage Statement tracks the approved TILA language. *Compare* ECF No 1, Ex. E *with* Appendix H to Part 12 C.F.R. § 1026 (Forms H-30(A),(B) & (C)). And, the Mortgage Statement specifically disclaims it is an attempt to demand payment from Plaintiff. (ECF No 1, Ex. E.)

With regard to preemption of the FCCPA claim, TILA expressly states it does "not annul,

alter, or affect the laws of any State relating to the disclosure of information in connection with credit transaction, except to the extent that those laws are inconsistent with the provisions of this subchapter . . . ." 15 U.S.C. § 1610. The FCCPA does not "relate to the disclosure of information in connection with credit transactions". It prohibits particular debt collection communications. FLA. STAT. § 559.72 ("In collecting consumer debts, no person shall . . . ."). Because application of the FCCPA to the communications at issue here is "inconsistent with" TILA, TILA controls, and Plaintiff's FCCPA claims are preempted.

Because there is a direct conflict between TILA's direction to send periodic statements to discharged borrowers and the FDCPA, to the extent those same statements are considered improper attempts to collect, the FDCPA has been impliedly repealed, and Plaintiff's FDCPA claims are precluded. *See, e.g., Simon*, 732 F.3d at 262-63 (FDCPA claim precluded by Bankruptcy Code where compliance with the FDCPA would necessarily violate the Bankruptcy Code's automatic stay provision); *Townsend v. Quantum3Group*, LLC, 535 B.R. 415, 429 (M.D. Fla. July 29, 2015) (FDCPA claim for a creditor's failure to register before filing proof of claim precluded where the Bankruptcy Code does not require registration).

**C. No violation of settlement agreement.**

Plaintiff's argument is that Nationstar's sending of the Mortgage Statement violated the settlement agreement. Although the settlement agreement provides that Nationstar shall cease contact with the Plaintiff, including account statements, it has express language allowing communications as provided by law. As discussed *supra*, Nationstar sent the Mortgage Statement pursuant to 15 U.S.C. § 1638(f) and 12 C.F.R. § 1026.41(a). Nationstar did not breach the settlement agreement.

14

## IV. CONCLUSION

Plaintiff's claims fail as a matter of law. Nationstar was not collecting a debt, but instead providing information, which is not actionable under either the FCCPA or FDCPA. Plaintiff's FDCPA claim is also precluded, and her FCCPA claim is preempted. The settlement agreement expressly allows for the sending of communications as provided by law. The complaint should be dismissed entirely and *with prejudice*.

Respectfully submitted,

**AKERMAN LLP**

By: */s/ Marc J. Gottlieb*
Marc J. Gottlieb (FL Bar No. 827819)
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2999
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
E-Mail: marc.gottlieb@*akerman.com*

*Attorney for Nationstar Mortgage LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this 19th day of January, 2016 via the Court's Notice of Electronic Filing on all CM/ECF registered users entitled to notice in this case.

By: */s/ Marc J. Gottlieb*
Marc J. Gottlieb