```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION

ARLENE ROTH,

        Plaintiff,

v.                               Case No: 2:15-cv-783-FtM-29MRM

NATIONSTAR MORTGAGE, LLC,

        Defendant.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on Defendant Nationstar's Motion to Dismiss for Failure to State a Claim (Doc. #12) filed on January 19, 2016. Plaintiff filed a Response (Doc. #16) on February 22, 2016. For the reasons stated below, Nationstar's Motion to Dismiss is denied.

**I.**

On December 14, 2015, Plaintiff Arlene Roth (Plaintiff) filed a five-count Complaint (Doc. #1) against Defendant Nationstar Mortgage, LLC (Nationstar) alleging violations of Section 559.72(9) of the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.55 et seq., Sections 1692e(2)(A), 1692e(10), and 1692f of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and a private settlement agreement. The claims are based on a communication Nationstar sent Plaintiff on November 18, 2015 (the Informational Statement

or Statement) (Doc. #1-5), which Plaintiff alleges was sent for the improper purpose of collecting on a mortgage debt for which her personal liability had been discharged in bankruptcy. Plaintiff also argues that, by mailing the Statement directly to her, rather than to her attorney, Nationstar materially breached a settlement agreement from the parties' previous lawsuit, also alleging improper attempts to collect on the mortgage debt.[1]

Nationstar's Motion to Dismiss for Failure to State a Claim (Motion to Dismiss) contends that all claims should be dismissed because: 1) Plaintiff cannot state a claim under either the FCCPA or the FDCPA since, as a matter of law, the Informational Statement does not constitute a communication sent for debt-collection purposes; 2) Section 524 of the Bankruptcy Code preempts Plaintiff's statutory claims; and 3) the Truth in Lending Act (TILA) also preempts Plaintiff's claims.

In Response, Plaintiff argues that applicable case law adequately supports her claim that the Informational Statement was sent for debt-collection purposes.[2] She contends further that Nationstar's preemption arguments have been rejected by numerous

---

[1] Plaintiff claims that Nationstar has a history of sending her these types of statements post-bankruptcy. (Doc. #1, ¶¶ 13, 16.)

[2] Specifically, the Complaint alleges that the Informational Statement is an attempt to collect a debt because it "includes an amount due, a payment due date, and most notably, a tear-off [payment] coupon." (Id. ¶ 20.)

district courts and circuit courts of appeals. Finally, she claims that she has sufficiently pled her breach of contract claim.

**II.**

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a Rule 12(b)(6) motion seeking to dismiss a complaint for failing to comply with Rule 8(a), the Court must accept as true all factual allegations in the complaint and "construe them in the light most favorable to the plaintiff." Baloco ex rel. Tapia v. Drummond Co., 640 F.3d 1338, 1345 (11th Cir. 2011). However, mere "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).

To avoid dismissal under Rule 12(b)(6), the complaint must contain sufficient factual allegations to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To do so requires "enough facts to state a claim to relief that is plausible on its face." Id. at 570. This plausibility pleading obligation demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."); Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." (citation omitted)).  Instead, the complaint must contain enough factual allegations as to the material elements of each claim to permit the Court to determine - or at least infer - that those elements are satisfied, or, in layman's terms, that the plaintiff has suffered a redressable harm for which the defendant may be liable.

## III.

### A.  Plaintiff's FDCPA Claims (Counts II-IV)

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C.A. § 1692.  To that end, debt collectors are prohibited, *inter alia*, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and from employing "unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f.  "A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the . . . discharge injunction (11 U.S.C. § 524), it is not." Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004).  A post-discharge demand for payment is thus "presumptively wrongful under the [FDCPA]." Id.

Plaintiff contends that Nationstar violated the FDCPA when it sent the Informational Statement in an attempt to collect on a debt it knew had already been discharged in Plaintiff's bankruptcy proceeding. "[I]n order to state a plausible FDCPA claim under § 1692e[ and 1692f,] a plaintiff must allege, among other things, (1) that the defendant is a "debt collector" and (2) that the challenged conduct is related to debt collection." Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012). Although Nationstar does not concede that it is a "debt collector" under the FDCPA and reserves the right to later contest that characterization, the issue currently before this Court is whether the Complaint adequately alleges that the Informational Statement is "related to debt collection."[3]

Not all communications that a creditor sends a debtor regarding a discharged debt are "related to debt collection." Although the FDCPA does not expressly set forth what constitutes collection-related activity, the Eleventh Circuit has held that "if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within

---

[3] In other words, the question is whether the Informational Statement constitutes a "dunning letter." See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189 n.7 (11th Cir. 2010) (per curiam) ("Since 'dunning' means 'to make persistent demands upon [another] for payment,' a 'dunning letter' may be considered as simply another name for a letter of collection." (alteration in original) (citation omitted)).

the scope of the Act." Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1302 (11th Cir. 2014) (citing Romea v. Heiberger & Assocs., 163 F.3d 111, 116 (2d Cir. 1998)). Stated differently, a communication comes within the purview of the FDCPA where it is made with "an animating purpose of . . . induc[ing] payment by the debtor." Dyer v. Select Portfolio Servicing, Inc., 108 F. Supp. 3d 1278, 1281 (M.D. Fla. 2015) (quoting Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) (citations omitted)).

The issue of whether a particular communication's animating purpose is to induce a debtor to pay is determined through the eyes of the "least sophisticated consumer."[4] See Caceres, 755 F.3d at 1303; LeBlanc, 601 F.3d at 1193, 1201. In making this determination, the district court must "look to the language of the [communication] in question, specifically to statements that demand payment[ and] discuss additional fees if payment is not tendered." Pinson v. Albertelli Law Partners LLC, 618 F. App'x 551, 553 (11th Cir. 2015) (per curiam) (citations omitted). The key question is whether "the least sophisticated consumer," reading such language in its entirety, would believe that the sender was attempting to induce payment on a debt.

---

[4] Nevertheless, "[c]ourts have interpreted the least sophisticated consumer standard in a way that protects debt collectors from liability for unreasonable misinterpretations." Tucker v. CBE Grp., Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010).

"Obviously communications that expressly demand payment will almost certainly have [an animating] purpose" of "induc[ing] payment by the debtor." Grden, 643 F.3d at 173 (citations omitted). A demand for payment can also be implicitly made. Pinson, 618 F. App'x at 553-54; see also Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385 (7th Cir. 2010) ("[T]he absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt."). In determining whether a communication seeks to induce payment by way of an implicit demand, courts consider, among other factors, whether the communication "states the amount of the debt, describes how the debt may be paid, [and] provides the phone number and address to [which to] send payment." Pinson, 618 F. App'x at 553; see also Dyer, 108 F. Supp. 3d at 1282 (granting motion to dismiss where "none of the letters discussed specifics of the underlying debt, such as the terms of payment or deadlines").

Turning to the Informational Statement at issue, the Court is convinced that the Complaint sufficiently alleges that the Statement constitutes an attempt to collect a debt.[5] Viewing the cumulative effect of the Statement's language from the perspective

---

[5] The Court acknowledges that the Bankruptcy Judge presiding over the parties' related bankruptcy action orally ruled that the Informational Statement was not an attempt to collect a debt. (Doc. #18-1.)

of the least sophisticated consumer, it is in fact difficult to conceive of any credible reason for Nationstar to send the Informational Statement *other than* to pressure Plaintiff into making payments on the mortgage debt for which her personal liability had already been discharged.[6] It is true that the Informational Statement does not expressly state that it is "a communication sent for the purpose of collecting a debt." But, as just discussed, this absence is not dispositive. The Statement lists the total amount due, contains a payment due date, states that a late fee will be charged for an untimely payment, gives six possible payment methods, and separates out from the total amount due the amount of fees and charges previously assessed. That is not all. The Statement contains an "Important Messages" box advising Plaintiff that her "escrow account has a negative balance," and expressly "recommend[ing she] make additional payments" to avoid "an increase in [her] monthly escrow payment."[7]

---

[6] Even if Nationstar did aim to provide Plaintiff with information, the Statement may also be seen as an attempt to collect a debt. Pinson, 618 F. App'x at 553; see also Caceres, 755 F.3d at 1302 ("[A] communication can have more than one purpose.").

[7] That the Statement alludes to "repercussions if payment [i]s not tendered" substantially undercuts Nationstar's argument that the Statement was only intended to provide information. Pinson, 618 F. App'x at 554; see also Goodson v. Bank of Am., N.A., 600 F. App'x 422, 431 (6th Cir. 2015) (courts should consider whether the communication "threaten[s] consequences" for non-payment).

There is also a detachable "payment coupon," which states the total amount due and recalculates the amount due for a late payment.[8]

The Court's conclusion is amply supported by case law. The Pinson court determined that two letters "contained an implicit demand for payment, because they stated the amount of the debt, described how the debt could be paid, and informed [the plaintiff] how he could tender payment." 618 F. App'x at 554. In Leahy-Fernandez v. Bayview Loan Servicing, LLC, mortgage statements were deemed communications sent in an attempt to collect a debt where they listed a total amount due, contained a payment coupon, mentioned other payment options, and stated that a fee would be charged for late payments. --- F. Supp. 3d ---, No. 8:15-CV-2380-T-33TGW, 2016 WL 409633, at *6 (M.D. Fla. Feb. 3, 2016). Similarly, in Patton v. Ocwen Loan Servicing, LLC, the plaintiff sufficiently alleged that the defendant's written communication attempted to collect a debt, despite the presence of "for informational purposes only" language, because the statement included a due date, the past due amount, a payment address, and a detachable payment coupon. No. 6:11-CV-445-ORL-19, 2011 WL 1706889, at *5 (M.D. Fla. May 5, 2011); see also Goodin v. Bank of Am., N.A., 114 F. Supp. 3d 1197, 1206 & n.10 (M.D. Fla. 2015)

---

[8] Although the coupon is titled "Voluntary Payment Coupon," the Statement mentions six possible payment methods. The word "voluntary" could easily be taken to mean that *using* the coupon to pay was voluntary, not that any payment whatsoever was optional.

(letters containing payment instructions, a due date, and an amount due had animating purpose of encouraging payment despite being labeled "FOR INFORMATION PURPOSES" and containing disclaimer language).

Nationstar argues that the Informational Statement cannot be considered an attempt to collect a debt, since it contains a disclaimer paragraph, which reads as follows:

> This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a demand for payment from any individual protected by the United States Bankruptcy Code. If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and is not an attempt to collect a debt. Please note, however, that Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest.

(Doc. #1-5.) This disclaimer, however, "is insufficient to shield [Nationstar] as a matter of law from liability at this stage of the litigation." Leahy-Fernandez, 2016 WL 409633, at *6 (citations omitted). Just because a disclaimer says that the communication "'is not an attempt to collect a debt,' does not make that true, especially in view of indications on the face of the document that the communication is intended to obtain money and is connected to a present or former obligation to pay an indebtedness." Donnelly-Tovar v. Select Portfolio Servicing,

Inc., 945 F. Supp. 2d 1037, 1048 (D. Neb. 2013).  The Informational Statement does contain such indications, including an "Important Message" *recommending* that Plaintiff make payments to reduce her negative escrow balance (i.e. threatening consequences for non-payment).  Further, Nationstar's boilerplate, hypothetical disclaimer language[9] is immediately followed by a "however" clause reserving Nationstar's right to pursue legal remedies against the recipient.  It is thus plausible (if not probable) that the least sophisticated consumer reading the disclaimer would *not* understand that she could refrain from making payments without incurring additional fees or exposing herself to future legal action.  Rather, she would feasibly be induced to make payments to avoid those repercussions.

In sum, the Court finds that the Complaint plausibly alleges that the Informational Statement was sent to induce payment on Plaintiff's mortgage debt.  As "no attempt to collect a debt" is Nationstar's sole argument for dismissal for failure to state a claim, the request to dismiss is denied.

---

[9] The disclaimer instead could have stated that Nationstar was aware Plaintiff's mortgage debt *had been* discharged in bankruptcy and, as a result, Plaintiff had no personal obligation to repay the debt and could not be pressured to do so.  See In re Nordlund, 494 B.R. 507, 516-17 (Bankr. E.D. Cal. 2011); In re Jones, No. 08-05439-AJM-7, 2009 WL 5842122, at *1 (Bankr. S.D. Ind. Nov. 25, 2009).  The Informational Statement also could have specified that the attached payment coupon was included as a "courtesy."  Id.

**B.     Plaintiff's FCCPA Claim (Count I)**

The Complaint also alleges that the Informational Statement violates Section 559.72(9) of the FCCPA, which states that no person shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."  Specifically, Plaintiff claims that Nationstar violated this provision by "sending the Informational Statement to Plaintiff in an attempt to enforce debt [sic] that had been discharged in Plaintiff's bankruptcy and was thus no longer legally owed to Defendant."  (Doc. #1, ¶ 29).

For Plaintiff to succeed with this attempt-to-enforce theory, a discharged debt must be considered a debt that is "not legitimate" under the FCCPA.  Neither Nationstar's Motion nor Plaintiff's Response adequately addresses this issue.  In support of the argument that Plaintiff fails to state a claim under Section 559.72(9), Nationstar does contend that her "mortgage was not extinguished by the discharge, and [thus] Nationstar's post-discharge actions were permissible by law."  (Doc. #12, p. 7.) Nationstar appears to presume, then, that because a mortgage is not extinguished by a bankruptcy discharge, the mortgage remains a "legitimate debt."  In response, Plaintiff "reiterates the arguments made . . . in support of her" FDCPA claims (Doc. #16, p. 13) and stresses that "[i]n the event of any inconsistency between

any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail." (Id. p. 14 (quoting Fla. Stat. § 559.552)).

Although the Court agrees that a bankruptcy discharge does not extinguish the debt itself, the cases cited in Nationstar's Motion do not address whether a debt that survives bankruptcy is a "legitimate debt" for collection purposes under the FCCPA. Nationstar has thus failed to carry its burden of showing that dismissal for failure to state a claim is warranted. Moreover, there is some authority for the proposition that "that although [a] mortgage lien survive[s] the discharge, the debt as against [the debtor] personally is no longer legitimate and, thus, attempts to collect from her personally violate Section 559.72(9)." Leahy-Fernandez, 2016 WL 409633, at *7 (M.D. Fla. Feb. 3, 2016). Accordingly, and because "[t]he FCCPA unequivocally states its goal [is] to provide the consumer with the most protection possible under either the state or federal statute," LeBlanc, 601 F.3d at 1192, the Court denies Nationstar's request to dismiss Plaintiff's FCCPA action for failure to state a claim.

**C.  Implied Repeal/Statutory Preemption**

Nationstar also seeks dismissal of Plaintiff's FDCPA and FCCPA claims on the ground that they are preempted under (or

impliedly repealed by[10]) Section 524 of the United States Bankruptcy Code and TILA/Regulation Z. The Court finds neither argument convincing.

**(1) The Bankruptcy Code**

At the time Nationstar filed its Motion to Dismiss, the Eleventh Circuit had expressly declined to address "[w]hether the Code 'preempts' the FDCPA when creditors misbehave in bankruptcy." Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1262 (11th Cir. 2014), cert. denied, 135 S. Ct. 1844, 191 L. Ed. 2d 724 (2015)). That question has since been answered. In Johnson v. Midland Funding, LLC, the Eleventh Circuit joined the Second,[11] Third,[12] and Seventh[13] Circuits in finding "no irreconcilable conflict" between the Code and the FDCPA, since the two "can be read together in a coherent way." --- F. 3d ---, No. 15-11240, 2016 WL 2996372, at *3 (11th Cir. May 24, 2016).

Crawford held that a debt collector violates the FDCPA by filing a proof of claim it knows is stale (time-barred) in a

---

[10] "One federal statute does not preempt another. When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other . . . ." Randolph, 368 F.3d at 730.

[11] Garfield v. Ocwen Loan Servicing, LLC, 811 F.3d 86, 91 (2d Cir. 2016).

[12] Simon v. FIA Card Servs., N.A., 732 F.3d 259, 274, 278 (3d Cir. 2013).

[13] Randolph, 368 F.3d at 732.

bankruptcy proceeding. 758 F.3d at 1262. Applying Crawford, the Johnson district court concluded that, because the Bankruptcy Code *allows* creditors to file stale proofs of claim in bankruptcy proceedings, the Code and the FDCPA irreconcilably conflict, and "the later-enacted Code impliedly repeal[s] the earlier-enacted FDCPA." Johnson, 2016 WL 2996372, at *4. In reversing the district court, the Eleventh Circuit stressed that repeal by implication due to an irreconcilable conflict is appropriate only where there is "some sort of 'positive repugnancy' between the statutes at issue" that makes coexistence impossible. Id. (citing J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, 143-44 (2001)). No such "positive repugnancy" exists between the FDCPA and the Code, the Circuit Court concluded, because "[t]he FDCPA and the Code differ in their scopes, goals, and coverage, and can be construed together in a way that allows them to coexist. . . . [They] can be reconciled because they provide different protections and reach different actors." Id. at *5. In particular, the Code applies to all "creditors," whereas "the FDCPA dictates the behavior of only 'debt collectors' **both within and outside of bankruptcy**." Id. (emphasis added).

But Johnson does not end the implied-repeal/preemption issue. "Even though the Bankruptcy Code does not impliedly repeal all FDCPA provisions to remedy conduct that violates the discharge injunction, it might impliedly repeal some specific provisions

invoked to remedy such conduct." Garfield, 811 F.3d at 92. The second question, then, is whether the specific "FDCPA claim [asserted] raises a direct conflict between the Code or Rules and the FDCPA, or whether both can be enforced." Simon, 732 F.3d at 274.

Nationstar's argument in this respect is that because redress for violations of a bankruptcy discharge order may (allegedly) be sought only through a contempt action, allowing Plaintiff to "manufacture" private FDCPA and FCCPA claims based on the same conduct circumvents the Code's remedial scheme, thereby creating an irreconcilable conflict. Even assuming violations of a bankruptcy discharge order cannot be redressed through a private action in bankruptcy court (a claim for which Nationstar has cited no Eleventh Circuit authority), it seems clear that, if there is no irreconcilable conflict when a debt collector "open[s] himself up to a potential lawsuit for an FDCPA violation" by acting in a way the Bankruptcy Code permits, Johnson, 2016 WL 2996372, at *6, then the fact that a debt collector can be sued in a private action under the FDCPA but not under the Code likewise presents no irreconcilable conflict. The Code and the FDCPA simply provide different remedies. See id. ("The FDCPA easily lies over the top of the Code's regime, so as to provide an additional layer of protection against a particular kind of creditor."). Indeed, before Johnson was decided, numerous courts had already rejected

the "conflicting remedies" position that Nationstar advances. E.g., Leahy-Fernandez, 2016 WL 409633, at *3; Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1336 (M.D. Fla. 2010); Gamble v. Fradkin & Weber, P.A., 846 F. Supp. 2d 377, 382 (D. Md. 2012).

"This same rationale can be logically extended to the FCCPA. A debt collector can comply simultaneously with the FCCPA and the Bankruptcy Code." Hernandez v. Dyck-O'Neal, Inc., No. 3:14-CV-1124-J-32JBT, 2015 WL 2094263, at *4 (M.D. Fla. May 5, 2015). Like the Hernandez court, this Court fails to see how "a debtor's choice to pursue the remedies provided under the FCCPA [would] stand as an obstacle to the objectives of the Bankruptcy Code," id., and particularly *after* a discharge has already occurred in bankruptcy. See Lapointe v. Bank of Am., N.A., No. 8:15-CV-1402-T-26EAJ, 2015 WL 10097518, at *3 (M.D. Fla. Aug. 26, 2015); see also Leahy-Fernandez, 2016 WL 409633, at *4. Accordingly, the Court rejects Nationstar's contention that the Bankruptcy Code bars Plaintiff's FDCPA and FCCPA claims.

**(2) TILA/Regulation Z**

Nationstar also argues that Plaintiff's claims are preempted under TILA, 15 U.S.C. § 1601 et seq., as implemented through "Regulation Z," 12 C.F.R. § 1026.1. Among other things, TILA requires a mortgage loan servicer to "transmit to the obligor, for each billing cycle, a statement setting forth" several pieces of information, including "the amount of the principal obligation

under the mortgage" and a "description of any late payment fees." 15 U.S.C.A. § 1638(f)(1). Nationstar contends that since Plaintiff's FDCPA and FCCPA claims are based on Nationstar's sending the Informational Statement, and since TILA/Regulation Z required (or at least permitted) Nationstar to send the Statement, there is an irreconcilable conflict, barring Plaintiff's claims.

The Court again disagrees. TILA did not oblige Nationstar to send Plaintiff the Informational Statement.[14] The Bureau of Consumer Financial Protection has clarified that a periodic statement is not required for mortgage debts discharged in bankruptcy proceedings.[15] Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 78 FR 62993-01. Because sending Plaintiff a periodic statement was permissive, not required, Johnson is instructive. Like a debt collector who

[14] Even if Nationstar mistakenly believed TILA required it to send Plaintiff a periodic statement, it "could [have] compl[ied] with federal law without potentially running afoul of the FCCPA [and the FDCPA] by not including" extraneous material in the Information Statement. Kelliher v. Target Nat. Bank, 826 F. Supp. 2d 1324, 1329 (M.D. Fla. 2011). Instead, Nationstar inserted an "Important Message" recommending additional escrow payments and attached a payment coupon.

[15] The clarification was, in fact, provided in response to questions "about how to reconcile the periodic statement requirements . . . with various bankruptcy law requirements" and "concerns that bankruptcy courts[] . . . may find servicers in violation of an automatic stay or discharge injunction if [they] provide a periodic statement." Amendments to the 2013 Mortgage Rules, 78 FR 62993-01.

chooses to file a stale claim in a bankruptcy proceeding, a debt collector who elects to send a periodic statement regarding a discharged debt exposes itself to a lawsuit under the FDCPA and the FCCPA.  This creates no irreconcilable difference.  See Leahy-Fernandez, 2016 WL 409633, at *3, 5.  Accordingly, TILA does not require dismissal of Plaintiff's statutory claims.[16]

Accordingly, it is hereby

**ORDERED:**

Nationstar's Motion to Dismiss for Failure to State a Claim (Doc. #12) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this 1st day of July, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

[16] The Motion also seeks dismissal of Plaintiff's breach of contract claim (Count V) under TILA.  Not only has the Court already rejected the argument that TILA required Nationstar to send the Informational Statement, Nationstar's argument is misdirected.  Plaintiff's claim is not based on the mere fact that Nationstar sent the Informational Statement, but rather, on Nationstar's sending the Statement directly to Plaintiff, not her lawyer, in violation of a material term in the parties' settlement agreement.  Nationstar's Motion does not address this. Nationstar's request for dismissal is thus denied.